Your Honor, may it please the Court, Frederick Nelson for Vegan Outreach and Nicky Bonet. Your Honor, the question here we're trying to decide is one that we think is settled in precedent. I vote this Court and the California Supreme Court directly. The question is, does the California Constitution, Article I, Section 2, apply to describe and therefore apply the proper test to fora, or do we just go to the First Amendment? The question we need to know is, what's the first step? I think the district court got confused on that part. In the California Constitution, it's obviously clear that the basic incompatibility test is still valid. The defendants have asked that they would reject that test entirely. They've asked that this Court look to cases that really involve a high school and look to other statutes in California code, which actually have no bearing. In fact, one statute cited by defendants goes against their entire argument. Penal Code 626.6 subpart B specifically states that both students and non-students should not have their peaceful free speech rights interfered with. I think the problem, I think we need to step way back and figure out who it is you're suing, because I think the major obstacle that you have to this lawsuit is that you haven't sued anybody who could redress your injury if, in fact, you could demonstrate an injury. Your Honor, I would say the Wolfson case from this Court addresses that. We have sued Defendant Chapa clearly, and there's no disputing that. Let's talk about Defendant Chapa. Does she have any power to change the policy? You're challenging the policy of designating a particular space on a college campus as free speech space, right? And so who makes that policy? Who can alter that policy? Who can enforce that policy? We know that the Board of Trustees for the college campuses can change the policy. However, it is obviously clear under the federal rules that injunctive and or declaratory relief, which is even a milder form which could help resolve this issue, which we think is significant, that injunctive or declaratory relief would guide not just Defendant Chapa, but all those who would seek to enforce that policy.  Yes, we have. And I don't understand how an injunction in regard to her role would apply to anyone else who may be enforcing the regulations or who may wish to change the regulations. Well, if we look again at the Wolfson case, again, we're looking at the third prong, I believe, is what the Court wants to address here, and that is redressability, I think you're addressing. Yes, right. Here, if this Court were to rule that California's basic incompatibility test is, in fact, still valid, then under those circumstances, the lower court would recognize that it has the authority to declare, and this court even would have the power to declare that to resolve the issue now so that we spend less time relitigating, to declare that, in fact, this policy, so regulating free speech, which is completely unjustified, those are obviously facts separate from just the law statement we're making now, that, in fact, those issues would be redressed because Defendant Chapa would know that, in fact, this policy is not valid under the California Constitution, Article I, Section 2, because the free speech areas we're talking about are very open to the public. The Defendant has entirely failed. In fact, that's something I would like to point to the fact at this point. Well, before you get to that particular issue, can you just tell me what her responsibilities are professionally at the college? Yes. This is uncontested. Defendant Chapa has the responsibility to enforce the policy. Well, I thought actually she had the responsibility to enforce on and off. Sometimes she'd be enforcing it. Sometimes other people would be enforcing it. This was not a particular function designated to her. Is that not right? I think that's not right, Your Honor. I think perhaps maybe that was somehow misstated perhaps in the defendant's brief where that came across to you. Oh, they would have made that mistake. They would have perhaps. We obviously know these facts. Now, this is undisputed. The campus security officers came to Nikki Benet, approached her while she was peacefully handing out literature, and said to her, You can't do this. You have to go see Defendant Chapa. She complied. She went to see Defendant Chapa. Defendant Chapa said to her, No, you cannot do this. You must abide by our regulations. And she said these words, and this is undisputed. Defendant Chapa said, If you fail to abide by this policy, you will be removed from campus. Obviously being removed by being arrested. Chapa actually gave her the policy, right? Yes. So that she could read it and understand what the policy is. Absolutely. And at one point you actually had named the Los Angeles Community College School District as a defendant, right? Correct, Your Honor. And it's that entity's policy that is at issue here, right? It is. Okay. So why is the community college district out of this case? Because they moved for 11th Amendment immunity, and the district court granted that, saying that as an 11th Amendment immunity entity, they cannot be sued. Well, they cannot be sued for damages, but they certainly can be sued for injunctive relief, which is essentially what you have left at this particular point. You're seeking out injunctive relief, and that certainly could have been subject to the lawsuit against the university, could it not? The defense's argument at that point in the proceedings, Your Honor, was that they could not be sued whatsoever. The district court agreed with that. Did you appeal that ruling? Your Honor, we didn't feel it was necessary to do it at the time, because as we were structuring the cases, you know, we're here on a preliminary injunction appeal. We were still getting together the names of the people who would be enforcing the policy. Now, here's the answer to this question I think we're really going toward and needing to answer, the redressability. What would this court do?  You would then issue an order that says to the district court, you need to apply the California Article I, Section 2 basic incompatibility test, which the district court refused to do in this case. And so doing, the district court would then be guided and not be confused any longer as to that issue. On so doing, Defendant Chappell would be informed, as would, in fact, all the other yet unnamed but to be named defendants who enforced the policies on the other campuses. They would be informed that they, too, must abide by the California Constitution. That's the question before the court. So you're, this is on preliminary injunction. So suppose we agree that you're not entitled to an injunction against Chappell. It goes back. Then you can amend your complaint and name the correct defendants. Correct, Your Honor. And again, as we stated, this is an issue because we're on a preliminary injunction appeal. We went forward addressing the people we know could enforce the policy, which is Defendant Chappell and the campus security officers. Correct. That's undisputed. There is no dispute by the defense that their campus security officers did approach defendant or plaintiff Nikki Bonet and tell her, you cannot do this. You must abide by our policies. There's no dispute by them that, in fact, Defendant Chappell demanded compliance with the policy. Unless you challenge the policy, whether or not Chappell were to be enjoined, there's going to be someone else who's going to enforce it against you. But this court would be able to say here, without any further relitigation of the issue in the lower court, this court could say what the standard is. And that's why we thought it was most judicially economic to go ahead and answer this question now. Because it's not. If you don't have standing, we don't have jurisdiction. You do understand that. Well, yes, Your Honor. We can't just go on and start saying, well, we think this is what the law is and how it would apply to this case. Right. Well, Your Honor, I would point out, first of all, in the broader just saying the word we don't have standing, rather than just the regressibility issue we've been arguing about, the district court found that we did have standing, and the defendants did not appeal that. I know that you're not going to say we have true standing. The district court said you sort of. As I recall, you sort of have standing. But can I ask you another basic question here? I mean, essentially what you're objecting to is having the FSA, this free speech location, being transferred near the statue. Is that correct? I mean, that's essentially it. As the district court pointed out, the walkways and sidewalks, we're saying. Well, right. But you really want to be by the student center where there's more activity, because apparently when you went to the statue there was less leaflets passed out. Isn't that right? I think that oversimplifies the issue, Your Honor. Well, here's my confusion, frankly. I looked through the affidavits and saw an affidavit from Mr. Variano. Mr. Variano said that in 2008 there was a lot of construction at the college or the university. As a result, the FSA was moved from the student center to the statue, which is a little less central location, true, but that ultimately the plans are that a new student center is being constructed, and as a result the FSA is going to be moved back to the most central part of the university so that people in your position will actually have the central location for the distribution of leaflets. Is that true? In which case aren't you getting exactly what you want by way of a voluntary decision on the university's part? No, Your Honor. The reason is this. What we're looking toward here is whether or not just the general sidewalks and walkways are open for speech, and under the Cuba case, a case still precedent for this court, unless the defense can come forward with some evidence that being in that location is incompatible with speech, then the plaintiffs prevail. The reason is this, and here it is quite simply. All four of them begin, whether it's private property, government property, as non-public. Let's just say that. The government buys a lot, and what do they erect there? Do they erect a building where government offices are, or do they put a public park? If they put a public park, a place where the public comes and goes, we know that that's a free speech area. If they put a government building, we know that you don't engage in free speech there. Now here, what we have are sidewalks and walkways. They look just like the ones in Cuba and the other cases from this court. There's no distinction, and there's no evidence from the defense that allowing speech in this area would cause any dilemma whatsoever to the defense. So we don't want to get tripped up on just saying, well, it's a college campus, so therefore it's non-public. That's the error. So what essentially you're saying is that even though the free speech area would be the prime spot at the university in which you'd be able to distribute the most leaflets possible, your point is that there should be no restrictions at all on any public areas or walkways, et cetera, just as a matter of law. Is that? That's not my statement at all. What I would be saying is simply this. Imagine the government of Pasadena creating sidewalks and then saying these sidewalks are owned by us, so therefore they're non-public. It couldn't happen. Under the California Constitution, there's no – We have a little bit of a delay. I didn't mean to step on your answer there. I have a more basic question. I don't understand why the college can't say, look, we exist for the benefit of students, faculty, and college employees. We don't open up the college to everybody in town. What's the basic problem with that? Well, going to this point we were just making about the city of Pasadena, for example, let's say they decided to say that we've got employees of the city. We've got staff that are here. We've got people who are residents of Pasadena. They have the right to say – So you're saying that a public sidewalk in an open area of a city is the equivalent of a college campus? Is that the – I hate to take the heat of your argument, but is that really what it boils down to? Under the California Constitution, yes. Now, the First Amendment analysis we know is a little bit different. What we look to, and even – Let me just follow this through. Could non-students come into the classroom and distribute literature there, too? Absolutely not. Absolutely not. See, that's what I wanted to address, Your Honor, with you, Judge Heston, as well as you, Judge Stefano. We're not even talking about classrooms or other closed places. As I mentioned, the government buys a piece of property, they create a government building. That's off limits. We're talking about open walkways. And the precedent from this court and the California Supreme Court is very clear. Walkways such as this are just open. Again, imagine Pasadena saying only our residents and our employees and staff are allowed to engage in free speech activity on our sidewalks. But you're asking us to ignore it. Suppose we were to hold that a college campus is different from a municipal sidewalk. Is that the end of it for you? Your Honor, I think that that would, in fact, ignore the basic incompatibility test of the California Constitution because even under Coquinda, a case relied heavily upon by the appellees. In that court, that plurality that was so disjunctioned opinion, the court still said the first step is to analyze the very sidewalk and to see what its function and purpose is. As in Cuba, this court took that and under the California Constitution said that because it's just a sidewalk where people go back and forth, that's your first step. It's not to say one or the other. It's to look at the fora at issue and to say. Is a college campus a traditional public forum? A college campus, as I said, all property is in its genesis a nonpublic. It's what the government does with it that changes it from being either nonpublic, traditional, limited. No, a traditional public forum, the open parks, open streets, open sidewalks. Under the California Constitution, because you analyze the way the sidewalk was being used, it would. The reason being simply, and again, we're not talking about classrooms or other buildings. Okay, so we're on preliminary injunction and you're saying, you're arguing the point that you are certain to win under the California test. Is that what it is? I believe we are certain to win. The reason being is that this court should do this different from the district court. This court should look at the actual fora at issue and decide whether or not that fora is basically incompatible with speech. If it's not basically incompatible with speech and there's nothing that would harm the defendants in allowing speech in that area, then under that analysis, because that's what you look at, and as I said, even the Coquinda case did that, you look at the fora first. You don't just stamp it one or the other, which is, I think, with the error. I think many times that comes to be the error. It's stamped, well, it's nonpublic, or it's stamped, well, it's traditional. It's how the government uses the fora that's important. There's also a limited public forum that can be designated for certain uses. Anyway, you're way over your time, so I think we should hear from the other side. Thank you, Your Honor. And may I address the answer to that question because Judge Shulman brought it up about the limited? Well, I think Judge Wardlaw has indicated your time is up, so thank you. Thank you. Thank you. May it please the Court, Charles Messer for the appellate, Pia Dodd-Shopper. The first question is a crucial question. That is, does the plaintiff have, do the plaintiffs have standing in this case? And redressability is a practical question for the Court. Is the defendant before the Court able to redress the injury? Ms. Choppa is a clerk at East Los Angeles College whose one of her responsibilities is to inform persons of the college's policy. The policy is adopted by an elected board of trustees, and they are potentially proper parties. This Court lacks jurisdiction over them. There is a huge due process problem with issuing an injunction that may, that would arguably bind the board when they are not parties. There was a discussion about the district's involvement in this case. The Court never ruled on the district's 11th Amendment objection. The plaintiffs voluntarily dismissed the district when they filed their first amended complaint. Well, you would agree that you may have an excellent 11th Amendment argument in response to the request for money damages that was made, but not injunctive relief. You're not suggesting that the 11th Amendment would prevent you from having to respond to that complaint? I think that would be a stretch. That would be a stretch? Right, but as a practical matter, the district has been dismissed and is no longer before the Court. All right, so procedurally, how did that come about? We raised the 11th Amendment defense in a letter in the process of meeting and conferring with the plaintiff's lawyer, also about a breaching schedule, about a motion for a preliminary injunction, and they voluntarily agreed to file a first amended complaint, which they did. And that was the topic of the three defendants' 12B6 motion to dismiss, a motion to strike, and the plaintiff's move for a preliminary injunction. So there was never a court ruling. And a docket, which was part of the appendix, shows there was never a court ruling on an 11th Amendment defense. Now, District Judge Wu found that there was, how do you put it, that plaintiffs do have some measure of standing to bring this case. And I think that's an excellent characterization. He found there was an injury in fact, and he found that there was a potential causal relationship between CHOPPA and a First Amendment injury, but he never reached the redressability. Did he actually rule on standing? Well, he did in the context of our 12B6 motion to dismiss, but he also said in that ruling, you know, the standard on 12B6 is less than it is on a motion for a preliminary injunction, and he never ruled on it in the context of the plaintiff's motion for a preliminary injunction. Well, you suggest that perhaps the board should be the appropriate party to be sued. Is it not true that there may be other people who would be responsible not for changing the policy, but for enforcing the policy? That is, full-time employees, the president, other members who might be solely responsible for enforcing the policy. And they would be viable parties to the action. Well, there are no employees whose sole responsibility is to enforce the board's free speech policy. Certainly people involved in that are potential parties. I would say they're not necessary parties. I don't think Ms. CHOPPA is a necessary party to this litigation, but certainly because one of her job responsibilities is to inform persons of the policy. If the board members were defendants or if the district was a defendant, then certainly that, well, at that point, if the district isn't joined, the district has a responsibility to inform all of its employees of the court's order. Or the policy could be declared unconstitutional if the right parties were in front. Potentially, although these policies are far from unconstitutional. That's going to the merits. We're still on standing. But can I ask you about exactly why the FSA was changed from the student location to the statue, and if it in fact is true that once the construction is completed, or maybe it's been completed already since this was 2008 or 2009, that in fact the FSA would be going back to the prime spot right by the student union? It will be. Construction is still ongoing. The campus is about 80 acres. There's about 30,000 students. Currently the available area is about 60 acres because 20 acres are under construction as we speak. The central area of the campus is under construction today. When construction is completed, or certainly when that central area is completed, Mr. Valeriano's declaration is correct. The plan is to move the free speech area back to the center of campus. It's been moved to accommodate construction and construction vehicles. But there's no case in the world that suggests that's a constitutional violation. That's the district taking reasonable steps to move the free speech area and to allow persons to speak on what they want, when they want, in that area that does not disrupt the educational mission of the college. Mr. Nelson made the point that the California Constitution is more generous to them than the First Amendment is. What's your response to that? Well, I think that's a mischaracterization of California law, that the forum analysis under California law is murkier than the federal analysis. But ultimately, if you look at, for example, the California Supreme Court's most recent decision in the International Society of Krishna Consciousness versus the City of Los Angeles, it was an airport case, that ultimately the court, even though they found a designated limited forum, they still applied a rational relation test and found that the restrictions were valid and not a violation of the California Constitution. So although the road may be slightly different, the destination is the same. I don't understand what you just said. I'm sorry.  It did not matter how we characterized the airport in terms of what type of a forum it was, no matter how you characterized the forum, ultimately the Supreme Court of California was going to analyze the city ordinance under a rational relation test and did it reasonably further legitimate city or state goals. Is that the test that Judge Wu applied in the district court? Judge Wu did not reach the California constitutional issues at all. And what's the significance of that then? Well, ultimately, in our view, it doesn't matter. In our view, the California rule is the same as the federal rule and that there are no cases that hold that college campuses are traditional forums or that these kinds of minimal restrictions on speech should be subject to any test other than a rational relation test. The college has a legitimate interest in educating students and promoting the safety and security of students and avoiding disruption. And no case has held that these kinds of rules, which are minimally restrictive, violate any constitutional rights. You know, there are a couple of cases out of other circuits that have addressed more restrictive rules than at East Los Angeles College. There was the 8th Circuit case of Bowman, which was discussed in the briefs regarding restrictions at the University of Arkansas. And there was a case that should have been discussed in the briefs but was not, Blodorn, decided by the 11th Circuit in January of this year, recorded at 631, 3rd, 1218. And Blodorn was especially interesting. It was at Georgia Southern University. The university had a free speech area, but you had to have a permit to speak there. And the 11th Circuit, well, filed for a plenary injunction. It was denied by the district court. It went to the 11th Circuit, and the 11th Circuit affirmed, saying that a permit procedure for a free speech area at a university did not violate any constitutional norms. So these are important decisions that I think should inform this Court of the merits of these kinds of claims. No courts have held that colleges are traditional public forums. They are not. Can I just shift the argument just a bit to the litter policy, because that's also before the court, the district court? Sure. The district court essentially said that it should be dismissed because the plaintiff never indicated that they would not comply with the litter policy. And I guess the broader question is whether the requirement that you pick up the leaflets that have been left on the ground is an infringement of your First Amendment rights. But is that correct, that the plaintiff never indicated that they would not comply? Nor, I guess, did the college ever indicate that they would enforce that particular policy. And I think that's the key point. The policy as a practical matter has never been enforced. The policy has no sanctions. You know, the idea is, well, if you leave litter behind, you'll be asked to leave. Well, you're already gone. It has no sanctions. This is not a case where there is a criminal statute or some kind of penalty for that. But the district court found that issue is not ripe. And also, you know, this is an example of cherry-picking a concept out of the motion for a preliminary injunction. The preliminary injunction just asked the district court to enjoin CHOPPA from enforcing any part of the district's policy. And then on appeal, they say, well, look at this part, the litter part of it. You know, this is a potential problem. Well, that's really not the issue that they presented to the district court. It's well-settled courts do not abuse their discretion when they deny requests for overly broad or poorly drafted injunctions, and that's part of this case. To me, I read the litter policy as being part of the free speech policy because this was the school's time, place, and manner restrictions on the type of speech and the manner in which you must conduct yourself when you're doing speech on this campus, and that would be tested against the governmental interest. So to me, it just seemed as part of the policy, part of the general policy for governing non-student speech on campus. And that's a fair characterization, but this comes back to where we started. Why is Piedad CHOPPA the only defendant in this case? I mean, she can't change the litter policy or any other part of the policy. And the only case that they plaintiff cites, Schneiderman, is a public parks case from 1939. So there's no plausible contention that the college is a traditional public forum that's subject to those same attacks. Unless the court has further questions, we'll submit. All right, thank you, counsel. Thank you. Thank you.
judges: Sessions, Silverman, Wardlaw